IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs March 24, 2020

**TERRY TRAMMELL v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Knox County**
**No. 112041   G. Scott Green, Judge**

————————————————————

**No. E2019-01147-CCA-R3-PC**

————————————————————

Petitioner, Terry Trammell, was convicted by a Knox County Criminal Court jury of theft over $1000 and sentenced to twelve years in prison. This Court affirmed the judgment of the trial court on direct appeal. *State v. Terry Trammell*, No. E2016-01267-CCA-R3-CD, 2017 WL 1861792, at *3 (Tenn. Crim. App. May 8, 2017), *no perm. app. filed*. Petitioner sought post-conviction relief and the post-conviction court denied relief. On appeal, Petitioner contends that the post-conviction court erred by denying his claim that he received ineffective assistance of counsel during the guilt phase of the trial. After a thorough review of the record, we affirm the judgment of the post-conviction court on the basis that Petitioner received effective assistance of counsel.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

THOMAS T. WOODALL, J., delivered the opinion of the court, in which JOHN E. WILLIAMS, P.J., and ROBERT L. HOLLOWAY. Jr., J. joined.

J. Liddell Kirk, Knoxville, Tennessee, for Petitioner, Terry Trammell.

Herbert H. Slatery III, Attorney General and Reporter; Garrett D. Ward, Assistant Attorney General; Charme P. Allen, District Attorney General; and Ta Kisha Fitzgerald, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

*Factual Background*

Petitioner, Terry Trammell, appeals the denial of his post-conviction petition. Petitioner argues trial counsel was ineffective because trial counsel did not adequately

advise Petitioner about whether he should testify at trial. Petitioner claims had he been advised to testify at trial he would have done so.

The recitation of evidence in the direct appeal opinion contains the following:

Defendant was indicted by the Knox County Grand Jury in October of 2015 for two counts of theft of property valued at least $1,000 but less than $10,000. Count One of the indictment alleged that Defendant knowingly and unlawfully obtained tablet computers from an Aaron's Sales and Leasing store without their effective consent. Count Two of the indictment alleged that Defendant knowingly and unlawfully exercised control over tablet computers from Aaron's Sales and Leasing.

. . .

The matter proceeded to trial at which the general manager of Aaron's Sales and Lease, Sam Hartness, testified. Mr. Hartness was responsible for monitoring the store's delivery area in the back of the store as well as watching the area around the front desk.

On July 9, 2015, Mr. Hartness had only been working at the North Broadway store location for approximately six months but had worked for the company for a longer period of time. At around 3:30 p.m., Mr. Hartness saw Defendant and several others walk into the store and look around. Admittedly, Mr. Hartness was busy because he was "short staffed that day" and he was "going back and forth" between the delivery area in the rear of the store and the showroom area in the front of the store where customers were looking around. Mr. Hartness did not witness Defendant and his companions leave the store but noticed "ten, fifteen minutes" later that they were gone. Mr. Hartness explained that it "was probably the next day when [he] was reconciling our weekly inventory [that he] realized that two of [the] tablets had gone missing." Mr. Hartness recalled that the tablets were last seen on the front counter of the store and had a value of $549.99 each. Mr. Hartness explained that the tablets were not new but had been rented by "about two people" prior to their return to the store. The tablets could not be located so Mr. Hartness "reviewed the video cameras after talking to the associates to see if anybody had moved them." On the video, Mr. Hartness identified Defendant. He saw Defendant "approach the front counter one of the times when [his] attention was not up front." Defendant appeared to "reach[ ] over where ... the two tablets [were] laying, grab[ ] one of our monthly advertising flyers, slip[ ] it over [the

- 2 -

tablets], and tuck[ ] them under his arm and walk[ ] out the front door." Mr. Hartness filed a police report.

A few days later, Defendant returned to the store and asked about "some merchandise." Mr. Hartness was able to get Defendant's name and relay that information to the police. Mr. Hartness identified Defendant from a photographic lineup. Defendant did not present proof at trial. The jury found Defendant guilty of two counts of theft. The trial court sentenced Defendant as a Career Offender to twelve years on each count. The trial court merged Count Two with Count One, for a total effective sentence of twelve years at 60%.

*Terry Trammell*, 2017 WL 1861792, at *1-2.

## Post-Conviction Relief Petition

On December 8, 2017, Petitioner filed a timely pro se petition for post-conviction relief. Appointed counsel filed an amended petition claiming trial counsel was ineffective because counsel failed to advise Petitioner that he needed to testify at trial to explain his actions recorded on video evidence presented by the State.

## April 11, 2019 Post-Conviction Hearing

The post-conviction court held an evidentiary hearing April 11, 2019. Because Petitioner raises only a single claim on appeal - that trial counsel was ineffective by failing to advise Petitioner to testify at trial - we will limit our recitation of the testimony at the post-conviction hearing to the testimony relevant to that issue only. *See e.g., William Boatwright v. State*, No. E2017-00211-CCA-R3-PC, 2018 WL 2324369, at *4 (Tenn. Crim. App. May 22, 2018). Trial counsel testified at the hearing about the discovery received prior to the trial regarding Petitioner's case. Trial counsel informed Petitioner of the contents of the video prior to trial. Trial counsel confirmed that it is his usual operating procedure to have a conversation with clients about whether or not to testify, but he could not recall having that specific conversation with Petitioner. Trial counsel testified if he had the conversation with Petitioner about testifying at trial it "would go with my general wariness of a defendant taking the stand" and "it would go with my general wariness of somebody with a felony record taking the stand." Trial counsel testified "generally I do not tell my clients one way or the other what to do, I inform them and ask them to make the decision when they are informed [on the decision to testify or not]." Trial counsel recalled, "[i]n all of my trials that I've done, I cannot recall ever telling the defendant they should or should not take the stand. I make sure they have their information, so that they can make an informed decision."

Petitioner testified he had a conversation with trial counsel prior to trial about his criminal history and the likelihood the State would bring up prior convictions during cross-examination. Petitioner testified he made the decision not to testify solely because of his prior criminal record, and trial counsel did not explain any other reasons why Petitioner should or should not testify. Petitioner specifically testified that trial counsel did not advise Petitioner to testify, and did not advise Petitioner *not* to testify. Petitioner recalled having a conversation with the trial court during which the trial court clarified it was ultimately Petitioner's decision whether to testify.

### *Post-Conviction Court's Order*

Following argument, the post-conviction court took the case under advisement. In its order denying the petition, the court noted Petitioner alleged his conviction was invalid because he received ineffective assistance of counsel premised upon counsel's advice to Petitioner he should not testify. The post-conviction court heard the testimony of Petitioner as well as that of his trial counsel. It is undisputed that Petitioner was properly given the appropriate *Momon* warnings prior to declining to testify. 18 S.W.3d 152, 155 (Tenn. 1999). The post-conviction court generally concluded that:

> At issue is the petitioner's present assertion that he should have testified in order to "explain his actions recorded on video evidence presented by the State." The evidence within the trial at issue consisted in part of a security video which clearly shows the defendant picking up the tablet in question in conjunction with a magazine/flyer and walking off with the same. Had the petitioner elected to testify and cast an innocent explanation for these events the jury would have discovered this [p]etitioner's extensive criminal history. The Pre-Sentence Investigation Report lists twenty-two prior felony convictions attributed to this [petitioner] which convictions include multiple theft, forgery, and burglary offenses. It is inconceivable the [p]etitioner would have provided a credible explanation which would have altered the outcome of his trial. It was/is sound trial strategy to avoid exposing the petitioner's extensive criminal history. As a consequence, this Court may not second guess counsel's trial tactics where the same are reasonable and based upon sound professional judgment. *See e.g. State v. Smith*, 24 S.W.3d 274 (Tenn. 2000). This Court finds that counsel's advice to the [p]etitioner that he should not testify was reasonable under the facts of this case and is not a basis for relief within this proceeding.

### *Standard of Review*

To obtain post-conviction relief, a petitioner must prove that his or her conviction or sentence is void or voidable because of the abridgement of a right guaranteed by the United States Constitution or the Tennessee Constitution. Tenn. Code Ann. § 40-30-103 (2019); *Howell v. State*, 151 S.W.3d 450, 460 (Tenn. 2004). A post-conviction petitioner bears the burden of proving his or her allegations of fact by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f) (2019); *Dellinger v. State*, 279 S.W.3d 282, 293-94 (Tenn. 2009). "Evidence is clear and convincing when there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence." *Grindstaff v. State*, 297 S.W.3d 208, 216 (Tenn. 2009) (quoting *Hicks v. State*, 983 S.W.2d 240, 245 (Tenn. Crim. App. 1998)). Under the Sixth Amendment, when a claim of ineffective assistance of counsel is made, the burden is on the petitioner to show (1) that counsel's performance was deficient and (2) that the deficiency was prejudicial. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see Lockhart v. Fretwell*, 506 U.S. 364, 368-72 (1993). Failure to satisfy either prong results in the denial of relief. *Strickland*, 466 U.S. at 697.

The deficient performance prong of the test is satisfied by showing that "counsel's acts or omissions were so serious as to fall below an objective standard of reasonableness under prevailing professional norms." *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1966) (citing *Strickland*, 466 U.S. at 688; *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975)). The prejudice prong of the test is satisfied by showing a reasonable probability, i.e., a "probability sufficient to undermine confidence in the outcome," that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

### *Failure to testify at trial*

Petitioner asserts trial counsel rendered ineffective assistance by failing to advise him to testify in light of the video evidence received by trial counsel. The deficient performance prong of the test is satisfied by showing "counsel's acts or omissions were so serious as to fall below an objective standard or reasonableness under prevailing professional norms." *Goad*, 938 S.W. 2d at 370 (citing *Strickland*, 466 U.S. at 688; *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975)). Moreover, the reviewing court must indulge a strong presumption that the conduct of counsel falls within the range of reasonable professional assistance. *See Strickland*, 466 U.S. at 690.

Trial counsel testified he did not believe there was a good defense and the best trial strategy was to attempt to poke holes in the State's case. Trial counsel testified it

was his standard operating procedure to have a conversation with clients about the decision to testify. Upon review of the record, Petitioner was advised of his right to testify by both trial counsel and the trial court. Petitioner was also advised by both trial counsel and the trial court that if he did choose to testify his previous criminal convictions could be used against him to impeach his testimony. The trial court concluded that it is "inconceivable the Petitioner would have provided a credible explanation which would have altered the outcome of the trial" and "it was/is sound trial strategy to avoid exposing the petitioner's extensive criminal history."

This Court has held that "not every mistake of judgment or misconception of law made by defense counsel will deprive the accused of his constitutional right to effective representation nor is the accused deprived of such a right because a different procedure or strategy might have produced a different result." *See Williams v. State* 599 S.W.2d 276, 280 (Tenn. Crim. App. 1980). Contrary to the post-conviction court's finding that trial counsel specifically advised Petitioner to *not* testify, our review shows that neither trial counsel nor Petitioner stated that such advice was given. Petitioner specifically testified that trial counsel did not advise Petitioner to not testify. Trial counsel testified that he did not recall his exact conversation on this matter with Petitioner, but his normal procedure was to advise a client of the pros and cons of testifying, and allow the client to make the decision. The error by the post-conviction court's finding of fact does not affect the result. The record is undisputed that trial counsel advised Petitioner that his prior criminal record could be used against him if he testified. Petitioner chose not to testify based upon his desire that the jury not know about his extensive prior criminal record. The post-conviction court listed the extensive prior criminal record in its order denying relief. The record abundantly supports the post-conviction court's denial of relief to Petitioner. Neither deficient performance nor prejudice to Petitioner was proven.

*Conclusion*

For the foregoing reasons, the judgment of the post-conviction court is affirmed.

_____
THOMAS T. WOODALL, JUDGE